**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
FRANK V. PONTERIO,                         :
                                             :
                         **Plaintiff,**    :
                                             :
         - against -                     :
                                             :

JUDITH S. KAYE, Chief Judge of the State of New     :
York, JONATHAN LIPPMAN, Chief Administrative  :
Judge of the Courts, JOHN T. BUCKLEY, Presiding  :    **06 Civ. 6289 (HB)**
Justice of the Appellate Division, First Department,  :
A. GAIL PRUDENTI, Presiding Justice, Appellate   :    **OPINION**
Division, Second Department, ANTHONY V.        :    **AND ORDER**
CARDONA, Presiding Justice, Appellate Division,   :
Third Department, EUGENE F. PIGOTT, JR.,      :
Presiding Justice, Appellate Division, Fourth      :
Department, and THE ADMINISTRATIVE BOARD  :
OF THE COURTS,                            :
                                           :
                         **Defendants.**   :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Frank V. Ponterio ("Plaintiff" or "Ponterio"), a retired New York State

Supreme Court Justice, brings this action pursuant to 42 U.S.C. § 1983.  His claims arise

out of the Administrative Board of the Courts'[1] (the "Board's") 2003 and 2004 denials of

his applications for recertification as a retired Justice.  Ponterio alleges that 1) the

Board's 2003 denial of his recertification was a retaliatory act that violated his rights

under the First Amendment of the United States Constitution; 2) the Board's failure to set

forth reasons for its denial effectively constituted a "denial of access to the courts"; and

3) the Board's 2004 denial of his application for recertification violated his rights to

Equal Protection under the Fourteenth Amendment.  Ponterio also brings a state law

claim of retaliation pursuant to N.Y. EXECUTIVE LAW § 296.  Ponterio has moved for

preliminary injunctive relief, i.e. an order directing the Board to recertify him as a retired

Justice and thus place him back on the bench.

---

[1] The Administrative Board of the Courts consists of the Chief Judge of the New York Court of Appeals
and the Presiding Justices of the four Appellate Divisions.  N.Y. CONST., Art. VI, § 28(a); N.Y. JUDICIARY
LAW § 210(2).

Defendants Judge Judith S. Kaye, Judge Jonathan Lippman, Justice John T. Buckley, Justice A. Gail Prudenti, Justice Anthony V. Cardona, Justice Eugene F. Pigott, and the Administrative Board of the Courts (collectively, "Defendants") have moved to dismiss Ponterio's claims pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6), on the grounds that 1) *Rooker-Feldman* doctrine bars Plaintiff's claims, 2) *Younger* abstention doctrine bars Plaintiff's claims, 3) *res judicata* and collateral estoppel bar Plaintiff's claims, and 4) Plaintiff's claims fail as a matter of law.

At the outset, I am denying Plaintiff's request for injunctive relief in its entirety because Plaintiff does not show a likelihood of "success on the merits" on his claims, for the reasons outlined below.  See Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005).

Because Plaintiff's First Amendment claim and state law retaliation claim are barred by *res judicata* and collateral estoppel principles, and alternatively fail on their merits, I must dismiss those claims.  Because Plaintiff's "denial of access" claim fails on its merits, I must dismiss that claim.  Plaintiff's Equal Protection claim is a much closer question, and for now, that branch of Defendants' motion to dismiss is denied.

## I.   BACKGROUND

The following facts are taken from Plaintiff's Complaint, as well as opinions and relevant documents from Plaintiff's prior state court litigation.[2]

A.  Ponterio's 1998 Reassignment

On November 6, 1996, Plaintiff Ponterio was elected to a 14-year term as a Justice of the Supreme Court in the Second Judicial District, effective January 1, 1997. Plaintiff's Complaint ¶ 4 ("Pl. Compl.").  Plaintiff was assigned to the matrimonial part of Supreme Court in Richmond County.  Pl. Compl. ¶ 9; Ponterio v. Kaye, 25 A.D.3d

---

[2] "In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings, such as affidavits and other documents."  Leitner v. New York, 2000 U.S. Dist. LEXIS 3767 (E.D.N.Y. 2000), citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  As such, on Defendants' unopposed motion, I take judicial notice of the pertinent documents to Ponterio's prior state court litigation, i.e. Ponterio's state court complaint, see Affirmation of Constantine Speres, November 3, 2006 ("Speres Aff."), Ex. A; the State Supreme Court opinion, see Ponterio v. Kaye, Index No. 400281/04 (N.Y. Sup. Ct. May 17, 2004) (Friedman, J.), at Speres Aff., Ex. B; the Appellate Division opinion, see Ponterio v. Kaye, 25 A.D.3d 865 (N.Y. App. Div. 3rd Dep't 2006); and relevant documents regarding Ponterio's prior certification and denial of recertification.  See Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (Court may judicially notice publicly filed documents on 12(b)(6) motion).

865, 866 (N.Y. App. Div. 3rd Dep't 2006).  Subsequently, a second matrimonial part was
created and both parts were consolidated.  Ponterio v. Kaye, 25 A.D.3d 865, 866.
Plaintiff's part was transformed into a general civil part.  Id.  Plaintiff was removed from
his matrimonial part in September 1998.  Ponterio v. Kaye, Index No. 400281/04, at 4
(N.Y. Sup. Ct. May 17, 2004) (Friedman, J.), at Speres Aff., Ex. B.  Plaintiff heard civil
matters and a limited number of matrimonial cases.  Ponterio v. Kaye, 25 A.D.3d 865,
866.

Plaintiff alleges generally that his reassignment to a civil part stemmed not from
the needs of judicial reorganization, but from an accusation of gender bias levelled at him
by Justice Betty Weinberg Ellerin.  Pl. Compl. ¶ 10; Ponterio v. Kaye at 866-67.
Ponterio alleges that on March 6, 1998, Hon. Michael Pesce, the Administrative Judge
for his court, told him that he had a communication from defendant Jonathan Lippman
("Lippman"), Chief Administrative Judge of the Courts.  The communication was that
Ponterio "was being summarily removed from the matrimonial part based upon an
accusation of gender bias," and "if [Ponterio] resisted such removal, he could jeopardize
his opportunity for recertification."[3]  Pl. Compl. ¶ 10; see also Plaintiff's Complaint,
December 1, 2003, Ponterio v. Kaye, Index No. 400281/04 ("Pl. State Compl."), ¶ 21.
Ponterio alleges more specifically, but without any corroboration, that Justice Ellerin
"sought to replace [him] with a female judge of her choosing in order to influence
decisions in matrimonial cases to favor female litigants."  Pl. Compl. ¶ 11;  Pl. State
Compl. ¶ 22, 23.

Ponterio alleges that on April 16, 1998, he informed Court of Appeals Judge Vito
Titone, allegedly "acting as an intermediary," that he would expose to the press Justice
Ellerin's "scheme to influence judicial decisions" by putting a woman in the matrimonial
part if he was removed from the matrimonial part.  Pl. Compl. ¶ 12.[4]  Ponterio
additionally alleges that Appellate Division Justice Guy Mangano threatened him with
"consequences" if he exposed Justice Ellerin's scheme to the press.  Pl. Compl. ¶ 13.[5]
Around this time, by Ponterio's account, Defendants Chief Judge Kaye ("Kaye") and

---

[3] In actuality, at this point in time, Ponterio had not yet been certified, let alone recertified.

[4] Plaintiff did not allege this fact in his state court complaint.

[5] Plaintiff did not allege this fact in his state court complaint.

3

Lippman gave him "assurances" that his reassignment "was made in the ordinary course," that "there were no complaints against him," that "Justice Ellerin had been instructed to cease her efforts to have [him] removed," and that there would be "no future adverse consequences for [his] resisting a reassignment."  Pl. State Compl. ¶¶ 24, 27, 28, 31, 36.  After an April 17, 1998 telephone call with Judge Kaye, presumably during which he was given such "assurances," Ponterio, "fearing he would jeopardize his opportunity for certification, gave up his plan to expose Justice Ellerin's scheme."  Pl. Compl. ¶ 14; see also Pl. State Compl. ¶¶ 24, 27, 28, 31, 36.  As noted above, Ponterio was removed from his matrimonial part in September 1998.  Ponterio v. Kaye, Index No. 400281/04, at 4, at Speres Aff., Ex. B.

   B.  Ponterio's 2001 Certification and Subsequent Denials of Recertification

   Ponterio reached the mandatory retirement age of 70 in 2001.[6]  He applied for certification and was certified by the Board as a retired Justice for a two-year term beginning on January 1, 2002.  Ponterio v. Kaye, 25 A.D.3d at 867; Ponterio v. Kaye, Index No. 400281/04, at 3.

   On February 7, 2003, Judge Lippman advised Ponterio by letter that he was eligible for a recertification for a second two-year term.  Ponterio v. Kaye, Index No. 400281/04, at 3.  Ponterio completed the application and the required mental and physical examinations.  Id.; Pl. Compl. ¶ 16.  However, the Richmond County Bar Association did not recommend Ponterio's recertification.  Ponterio v. Kaye, 25 A.D.3d at 867; Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp."), November 28, 2006, at 3.[7]  On September 30, 2003, the Board declined to recertify Ponterio for a second two-year term.  Pl. Compl. ¶ 17; Pl. State Compl. ¶ 12.[8]  By Ponterio's account, no reasons were given for his denial.

---

[6] Pursuant to N.Y. CONST., Article VI, § 25(b) and N.Y. JUDICIARY LAW § 115, Justices of the Supreme Court are required to retire once they reach age 70.  They may, however, be certified by the Administrative Board of the Court to serve as Justices for a two-year term, and may be recertified for two additional two-year terms, for a total of six years, until they reach the age of 76.

[7] Ponterio alleges that the negative recommendation of the Richmond County Bar Association was "the product of personal vendettas by 3 highly placed members," and that "as a direct consequence of the Association's rating… the Association's by-laws relating to judicial screening were subsequently completely revised."  Pl. Opp. at 3.

[8] In his state complaint, Ponterio alleged that the Board approved 46 retired Justices for certification and denied four.  Pl. State Compl. ¶ 16; Ponterio v. Kaye, Index No. 400281/04, at 3.  In his current complaint, Ponterio alleges that he was the only Justice of the four denied whose supervising judge recommended his certification.  Pl. Compl. ¶ 17.

Pl. Compl. ¶ 17, 18.

On May 28, 2004, Ponterio wrote Judge Lippman asking for application forms for recertification.  Affidavit of John Eiseman ("Eiseman Aff."), November 28, 2006, at Ex. H.  On June 28, 2004, Ponterio wrote Judge Kaye stating his belief that the prior denial of certification was not a permanent bar to his application and offering to serve without compensation.  Eiseman Aff., Ex. H; Pl. Compl. ¶ 19.  On August 16, 2004, Judge Lippman wrote Ponterio informing him that his letters were considered by the Board, and that the Board declined to reconsider its denial of his application.  Eiseman Aff., Ex. I.  Ponterio alleges that he was the only retired Justice denied the opportunity to apply for recertification in 2004, out of at least 30 eligible Justices.  Pl. Compl. ¶ 39.

C.   Ponterio's State Court Action

On December 1, 2003, Ponterio brought an action in New York State Supreme Court, alleging 1) that his reassignment constituted employment discrimination based on sex, in violation of N.Y. EXECUTIVE LAW § 296; 2) that Judges Lippman and Kaye's 1998 "assurances" constituted intentional misrepresentation; 3) that Judges Lippman and Kaye's 1998 "assurances" constituted breach of fiduciary duty; and 4) that the Board's 2003 denial of recertification constituted unlawful retaliation for his 1998 "complain[ts] to defendants [Kaye] and [Lippman] concerning Justice Ellerin's efforts to replace him with a female judge..."  See Ponterio v. Kaye, 25 A.D.3d at 867; Pl. State Compl., e.g. at ¶ 42.

Defendants characterize Ponterio's state action as a "hybrid Article 78 proceeding/damage action."  Eiseman Aff. ¶ 20.[9]  Regarding Ponterio's first three claims, he sought monetary damages.  Pl. State Compl., p. 6, ¶¶ 1-3. Regarding Ponterio's claim that the 2003 denial of his recertification constituted unlawful retaliation, Ponterio sought monetary damages and an injunction annulling the Board's determination and directing Lippman to place him back on the bench.  Pl. State Compl., p. 6, ¶ 4.

Justice Friedman, a Supreme Court Justice sitting in New York County, dismissed Ponterio's employment discrimination claim as barred by the statute of limitations.

---

[9] See Ponterio v. Kaye, Index No. 400281/04, at 1 ("Although the action was commenced by summons and complaint, it seeks relief in the nature of an Article 78 proceeding to the extent it requests an order annulling the Board's determination.  The complaint also pleads three causes of action for damages arising out of alleged sex discrimination against plaintiff in connection with Judge Lippman's transfer of plaintiff from a matrimonial part in 1998.").

Ponterio v. Kaye, Index No. 400281/04, at 6.  Justice Friedman dismissed Ponterio's intentional misrepresentation claim as barred by the statute of limitations, and alternatively because it failed as a matter of law.  Id. at 7-8.  Justice Friedman dismissed Ponterio's breach of fiduciary duty claim because it failed as a matter of law.  Id. at 9. Lastly, Justice Friedman dismissed Ponterio's unlawful retaliation claim because it failed as a matter of law, on two counts.  First, the five year delay between Ponterio's 1998 complaints and the 2003 denial of his recertification, as well as the Board's intervening certification in 2001, negated the requisite causal connection as a matter of law.  Id. at 10-11.  Secondly, Ponterio did not sufficiently plead facts to establish any showing of the requisite retaliatory animus on the part of Judge Lippman.  Id. at 11-12.

The Appellate Division, Third Department, noting that the "gravamen of [Ponterio's] complaint [was] a challenge to the Administrative Board's decision to deny him recertification," affirmed the ruling in its entirety.  Ponterio v. Kaye, 25 A.D.3d at 867.[10]  The Court of Appeals denied Ponterio's motion for leave to appeal, Judge Kaye taking no part in the decision.  Ponterio v. Kaye, 6 N.Y.3d 714 (N.Y. May 9, 2006).

D. Ponterio's Federal Action

On August 17, 2006, Ponterio filed his complaint in this Court.  First, Ponterio alleges that the Board's 2003 denial of his recertification was a retaliatory act violating his First Amendment rights, "motivated in whole or part by the intent of defendants Kaye and Lippman to retaliate against plaintiff for his threat to expose Justice Ellerin's scheme to influence judicial decisions."  Pl. Compl. ¶ 22.  (Additionally, Ponterio alleges that the Board's 2003 denial of his recertification was a retaliatory act in violation of N.Y. EXECUTIVE LAW § 296.  Id., ¶¶ 43-51.)  Secondly, Ponterio alleges that the Board's failure to set forth reasons for its 2003 denial constituted a "denial of access to the courts," in violation of the Fifth and Fourteenth Amendments, in that it wholly prejudiced his initial state court lawsuit to the extent that he was effectively denied the chance to bring the lawsuit at all.  Id., ¶¶ 28-37.  Lastly, Ponterio alleges a "class of one" Equal Protection claim.  Ponterio's theory is that the Board's 2004 denial of his application for recertification was based on Lippman and the Board's "irrational" and "wholly arbitrary"

---

[10] The First Department transferred the case to the Third Department for hearing and disposition.  Ponterio v. Kaye, 2005 N.Y. App. Div. LEXIS 8207 (N.Y. App. Div. July 21, 2005).

intent to punish him without any basis or legitimate governmental purpose.  Id., ¶ 40.

Ponterio seeks damages in the form of back pay, pain and suffering and punitive damages, attorneys' fees and costs, and injunctive relief placing him back on the bench. Pl. Compl. at p. 10-11.

## II.      STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party.  See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002).  "However, factual allegations must be distinguished from '[c]onclusory allegations or legal conclusions masquerading as factual conclusions,' as the latter will not be accepted as true."  Burns v. Cook, 2006 U.S. Dist. LEXIS 77625, at *10 (N.D.N.Y. 2006), citing Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III.      DISCUSSION

Defendants move to dismiss on the grounds that 1) *Rooker-Feldman* doctrine bars Plaintiff's claims 2) *Younger* abstention doctrine bars Plaintiff's claims, 3) *res judicata* and collateral estoppel bar Plaintiff's claims, and 4) Plaintiff's claims fail as a matter of law.

I will address each argument in turn.

A. *Rooker-Feldman* Doctrine

Under *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ("Hoblock"), citing, e.g., Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  *Rooker-Feldman* is a narrow doctrine to begin

with, and narrowed further by this Circuit's decision in <u>Hoblock</u>, where the Court held that the doctrine is "confined to… cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Hoblock</u>, 422 F.3d 77, 85, <u>quoting</u> Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("<u>Exxon-Mobil</u>").  Rooker-Feldman "does not deprive a district court of subject-matter jurisdiction 'simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party… then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  <u>Hoblock</u> at 86 (internal citations omitted), <u>citing</u> Exxon-Mobil, 544 U.S. 280, 293.

Thus, there exists a "set of federal suits… raising 'independent claims' that are outside Rooker-Feldman's compass even if they involve the identical subject matter and parties as previous state-court suits." <u>Hoblock</u> at 86.  Here, the question of whether Ponterio's lawsuit raises such "independent claims" turns on whether Ponterio's lawsuit complains of an "injury caused by a state court judgment."

The Second Circuit, in <u>Hoblock</u>, recently distinguished between state court judgments that "cause" the injury plaintiff complains of, as opposed to state judgments that merely "ratify," "acquiesce in," or "leave unpunished" the actions of a third party.[11] <u>See</u> <u>Hoblock</u> at 87-88.  The former category is barred by *Rooker-Feldman*; the latter category is not.[12]

---

[11] The Second Circuit stated the test as such: "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." <u>Hoblock</u> at 88.

[12] For example, if a state court terminated a parent's rights to his child, that would be an injury "caused" by the state court judgment.  Thus, a parent could not subsequently sue in federal court, alleging that his substantive due process parental rights were violated, and seek to overturn the state's determination.  Such a lawsuit would effectively be an appeal of the state-court judgment, and thus barred by *Rooker-Feldman*. <u>Hoblock</u> at 87.

However, "[s]uppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses.  If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment.  Instead, he will be alleging injury <u>based on the employer's discrimination</u>.  The fact that the state court chose not to remedy the injury does not transform

Here, Ponterio's federal action complains of injuries allegedly committed upon him by the Board and defendants Lippman and Kaye (i.e., the denials of his recertification), and subsequently ratified by the New York state courts. Ponterio's action falls squarely into Hoblock's second category of lawsuits that do not complain of injuries caused by state court judgments. Thus, *Rooker-Feldman* doctrine does not bar Ponterio's instant claims, and the Defendants' view is misplaced.

B. *Younger* abstention

Defendants argue that *Younger* abstention bars Ponterio's claims from consideration, as federal courts should generally refrain from interfering in ongoing state proceedings that implicate important state interests and afford plaintiff an adequate opportunity to raise federal constitutional claims. See Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74-75 (2d Cir. 2003), citing Younger v. Harris, 401 U.S. 37 (1971).

Because state proceedings do not appear to be "ongoing," it does not appear that *Younger* abstention applies here. Ponterio has litigated and lost his state claims up to the New York Court of Appeals. As *Younger* requires, he appears to have exhausted his state-court remedies.[13] See Kirschner v. Klemons, 225 F.3d 227, 234 (2d Cir. 2000), citing Huffman v. Pursue, 420 U.S. 592, 608 (1975).[14] Again, the Defendants may not succeed on this ground.

C. *Res Judicata* and Collateral Estoppel

Neither *Rooker-Feldman* nor *Younger* abstention doctrines, however, speak to whether Ponterio's claims are barred by principles of *res judicata* or collateral estoppel. See, e.g., L.A.M. Recovery v. Dep't of Consumer Affairs, 184 Fed. Appx. 85, 87-88 (2d Cir. 2006) ("Although *Rooker-Feldman* is not applicable, the prior state court judgment may still collaterally estop [plaintiff] from re-litigating its claims in federal court.");

---

the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment."  Hoblock at 87-88 (emphasis added).

[13] It should be noted that it does not appear that Ponterio has appealed his state case to the United States Supreme Court.

[14] Additionally, the Second Circuit has disapproved of the use of *Younger* where a plaintiff seeks money damages pursuant to 42 U.S.C. § 1983, on the theories that 1) money damages do not pose the spectre of interference with state interests that injunctive relief might, and 2) in New York, plaintiffs typically cannot obtain damages for civil rights violations in Article 78 proceedings.  Kirschner v. Klemons, 225 F.3d 227, 237-39.  Ponterio sought money damages on all his claims in state court.

<u>Hoblock</u> at 87 n.6 ("The subsequent federal suit could, of course, be barred by ordinary preclusion principles.").

I will first consider Ponterio's First Amendment claim.

       i.   *<u>Res Judicata</u>*

"The doctrine of res judicata, or claim preclusion, provides that a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Carlen v. Department of Health Servs.</u>, 1996 U.S. App. LEXIS 25241, at *2 (2d Cir. 1996); <u>see also</u> <u>Monahan v. New York City Dep't of Corr's.</u>, 214 F.3d 275, 284-85 (2d Cir. 2000). "The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law." <u>Carlen v. Department of Health Servs.</u>, 912 F. Supp. 35, 39 (E.D.N.Y. 1996), <u>citing</u> 28 U.S.C. § 1738; <u>Migra v. Warren City School Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984). New York requires an "identity of issues" and "identity of parties" for *res judicata* to apply. <u>Ruiz v. Commissioner of Dep't of Transp.</u>, 858 F.2d 898, 902 (2d Cir. 1988). In determining "identity of issues," New York uses a "broad transactional analysis." <u>Id.</u>, <u>citing</u> <u>Reilly v. Reid</u>, 379 N.E.2d 172 (1978); <u>see also</u> <u>Hoblock</u> at 95 (claim preclusion bars claims if they "could have been raised in state court and they arise from the same transaction or series of transactions") (citation omitted).

Ponterio's First Amendment claim arises from the same series of transactions that served as the subject of his state law complaint. As the Appellate Division noted, the "gravamen of [Ponterio's] complaint [was] a challenge to the Administrative Board's decision to deny him recertification, a determination which he [sought] to have annulled." <u>Ponterio v. Kaye</u>, 25 A.D.3d at 867. Ponterio, in both actions, alleged substantially the same facts as to Justice Ellerin's alleged scheme, his reassignment, his interaction with Judges Kaye and Lippman, and his eventual denial of recertification in 2003.[15] In state court, Ponterio challenged the Board's actions as a retaliatory act in violation of state employment law; in federal court, Ponterio now challenges the Board's actions as a retaliatory act in violation of the First Amendment. Nothing prevented Ponterio from

---

[15] It is true that Ponterio has alleged more specific facts in his federal complaint that appear styled to support his First Amendment claim; namely, that he informed Judge Titone that he would "expose" Justice Ellerin's "scheme," and that Justice Mangano threatened him with "consequences" if he did so. However, these facts were entirely within Ponterio's possession at the time of his state court lawsuit, and nothing precluded him from stating those facts then.

bringing his First Amendment claim in state court.  Ponterio's First Amendment claim is barred by claim preclusion because he could have brought it in state court.  See Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1232 (2d Cir. 1977) (the "crucial element underlying [claim preclusion] standards is the factual predicate of the several claims asserted… not the legal theory upon which a litigant relies.").

Ponterio notes, correctly, that "claim preclusion… does not apply where the initial forum did not have the power to award the full measure of relief sought in the subsequent litigation."  Carlen v. Department of Health Servs., 1996 U.S. App. LEXIS 25241, at *3, citing Rameau v. New York State Dep't of Health, 741 F. Supp. 68, 71 n.2 (S.D.N.Y. 1990); Davidson v. Capuano, 792 F.2d 275, 281-82 (2d Cir. 1986).  Thus, Ponterio argues, because damages from civil rights violations are not recoverable in an Article 78 action, his § 1983 claim should not be barred by res judicata.  See Carlen v. Department of Health Servs., 1996 U.S. App. LEXIS 25241, at *3.  However, Ponterio brought a "hybrid" Article 78 proceeding and damages action.  Ponterio sought money damages on all his claims in state court, including his retaliation claim that is nearly identical to the First Amendment claim he brings now.  The concerns that counsel raise against applying res judicata to § 1983 claims in New York are not present in Ponterio's case.

### ii. Collateral Estoppel

Alternatively, Ponterio's First Amendment claim is barred by issue preclusion, as distinct from claim preclusion.  "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Carlen v. Department of Health Servs., 1996 U.S. App. LEXIS 25241, at *3; Buechel v. Bain, 766 N.E.2d 914, 919 (N.Y. 2001).  For collateral estoppel to apply, New York law requires an "identity of issues," necessarily decided in the prior action and decisive of the present action, and that the litigant had a "full and fair opportunity" to contest the prior decision.  Buechel v. Bain, 766 N.E.2d 914, 919.[16]  Issue preclusion can unquestionably

---

[16] Ponterio argues that because the Board failed to set forth reasons for its denial, he was denied a "full and fair opportunity" to litigate his claims in state court, and thus claim preclusion and issue preclusion should not apply.  "[A] full and fair litigation opportunity is provided if the procedures in the initial forum meet the minimum demands of procedural due process."  Rameau v. New York State Dep't of Health, 741 F. Supp. 68, 71 n.3.  The New York Court of Appeals has held that the failure to set forth reasons to retired Justices who are denied recertification does not violate due process.  Marro v. Bartlett, 389 N.E.2d 808

bar a litigant bringing a § 1983 claim from relitigating issues decided in a prior Article 78 proceeding.  Carlen v. Department of Health Servs., 1996 U.S. App. LEXIS 25241, at *4, citing Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987); Rameau v. New York State Dep't of Health, 741 F. Supp. 68, 70-71.

The state courts decided two issues that now have preclusive effect on Ponterio's instant claim.  First, the state courts found that Ponterio could not, as a matter of law, establish a causal connection between his 1998 complaints of sex discrimination alleged against Kaye and Lippman and his 2003 denial of recertification, because of the length of the five-year delay and the intervening 2001 recertification.  See Ponterio v. Kaye, Index No. 400281/04, at 10-11; Ponterio v. Kaye, 25 A.D.3d at 869.  This failure to establish a causal connection, coupled with the failure to show any discriminatory animus, was essential to the state court's holding that Ponterio's retaliation claim failed as a matter of law.[17]  The existence of a causal connection is equally essential to Ponterio's First Amendment claim.  See Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) ("causal connection between the protected speech and the adverse employment action" is essential to First Amendment retaliation claim), citing, e.g., Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87 (1977).  Ponterio is estopped from arguing otherwise here, and his First Amendment claim fails as a matter of law.

It matters little that Ponterio argued then for a "causal nexus" to his 1998 complaints, as distinct from his 1998 "threats to expose Justice Ellerin's scheme." District courts in this Circuit have regularly held that issue preclusion bars relitigation of issues necessary to First Amendment claims, if based on the same factual predicate as prior retaliation claims.  See Carlen v. Department of Health Servs., 912 F. Supp. 35, 40 ("The Appellate Division's finding… that there was no support for plaintiff's retaliation claim precludes plaintiff's free speech claim. Plaintiff's free speech claim is inextricably intertwined with, if not identical to, his claim that he was retaliated against…), aff'd, 1996 U.S. App. LEXIS 25241; Scott v. Goodman, 961 F.Supp. 424, 433 (E.D.N.Y. 1996) (prior determination that union employee was not retaliated against for union activities

---

(N.Y. 1979).  Ponterio's argument is thus unavailing.

[17] See Ponterio v. Kaye, Index No. 400281/04, at 11 ("[T]his lengthy delay precludes plaintiff from establishing causality based on temporal proximity, particularly given the intervening event of the Board's favorable action on plaintiff's certification application in 2001.").

barred subsequent First Amendment claim of retaliation against "speech and associational activities"); see also Rameau v. New York State Dep't of Health, 741 F. Supp. 68, 70-71 (determinations in an Article 78 proceeding barred subsequent § 1983 claim of retaliatory discharge based on race and ethnicity).  Fundamentally, the issue being given preclusive effect is the state court's holding regarding the five-year delay, which is equally applicable whether the starting point is Ponterio's complaints generally, or his threats to expose Justice Ellerin's scheme specifically.[18]

Ponterio's state law retaliation claim pursuant to Executive Law § 296 is squarely barred by issue preclusion.  The state courts ruled directly on Ponterio's claim and dismissed it.  See Ponterio v. Kaye, 25 A.D.3d at 869.  Thus, I must also dismiss Ponterio's state law retaliation claim.[19]

Finally, even if Ponterio's First Amendment claim was not barred by issue preclusion, it would fail on the merits following the same analysis as the state courts'.  To state a First Amendment claim, Ponterio must allege a causal connection between his alleged protected speech and the adverse employment action, "sufficient to support the inference that the speech played a substantial part in the employer's adverse employment action."  Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (citation omitted).  Ponterio has not stated facts to sufficiently allege a causal connection here, either by circumstantial evidence based on temporal proximity, or direct evidence of retaliatory animus.[20]

---

[18] Additionally, Plaintiff has stated no facts to indicate that he ever communicated his "threat to expose Justice Ellerin's scheme" to Lippman or Kaye, nor that Lippman or Kaye were ever made aware of his communication of his threat to Judge Titone or Justice Mangano.  Ponterio does state that Judge Titone was "acting as an intermediary."  However, "conclusory statements" cannot "substitute for minimally sufficient factual allegations."  Furlong v. Long Island College Hospital, 710 F.2d 922, 927 (2d Cir. 1983).  The lack of any facts indicating a causal connection between Ponterio's "threats" and the Board's 2003 denial additionally supports dismissal of Ponterio's claim.

[19] Were the state law retaliation claim not barred by issue preclusion or claim preclusion, it would fail on its merits, following the same reasoning as that of the state courts.  See Ponterio v. Kaye, 25 A.D.3d at 869.

[20] See, e.g., Morris v. Lindau, 196 F.3d 102, 113 (based on two-year time lapse, "no inference of causation is justified"); Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 274 (U.S. 2001) ("The cases that accept mere temporal proximity… hold that the temporal proximity must be 'very close….' Action taken… 20 months later suggests, by itself, no causality at all.") (citations omitted).

Plaintiff's citation to Mandell v. County Of Suffolk & John Gallagher, 316 F.3d 368 (2d Cir. 2003), is unavailing.  In Mandell, the Second Circuit held that plaintiff could state a *prima facie* First Amendment retaliation claim even where a five-year delay existed between plaintiff's speech and the retaliatory act.  Mandell, 316 F.3d 368, 383.  However, in Mandell, plaintiff relied on direct evidence of retaliatory animus, rather than temporal proximity.  Id.  As noted above, Ponterio offers no direct evidence of retaliatory animus here.

In short, whether barred by claim preclusion or issue preclusion, or because it fails as a matter of law, I must dismiss Ponterio's First Amendment claim.

D.   "Denial of Access" Claim

Ponterio claims that the Board's failure to set forth reasons for its denial of recertification violated his constitutional right of access to the courts.  The Second Circuit has recognized a right of access to the courts, stemming from the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments.  Monsky v. Moraghan, 1997 U.S. App. LEXIS 36158, at *11 (2d Cir. 1997).

"Denial of access" claims typically fall into one of two categories.  First, litigants may claim that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits."  Christopher v. Harbury, 536 U.S. 403, 413 (U.S. 2002).  Thus, prisoners have sued for access to a law library,[21] or indigent plaintiffs have sued for waivers of filing fees.[22]  Id.  Secondly, litigants may claim that they have irrevocably lost the ability to file a lawsuit, typically because of a massive governmental cover-up denying plaintiffs the ability to gather evidence.  Id.[23]

At the outset, Ponterio's "denial of access" claim is not barred by *res judicata* or collateral estoppel.  Ponterio correctly notes that his "denial of access" claim is based on the alleged loss of his state court lawsuit itself, which is a "a species of property protected by the Fourteenth Amendment's Due Process Clause."  N.Y. State NOW v. Pataki, 261 F.3d 156, 163 (2d Cir. 2001); see also Christopher v. Harbury, 536 U.S. 403, 415 ("the right [of access to the courts] is ancillary to the underlying claim").  Put another way, Ponterio claims he did not have a full and fair opportunity to litigate his "denial of access" claim in the prior state action, since his prior action forms the basis of his "denial of access" claim now.

However, Ponterio's denial of access claim fails on its merits.  "In order to

---

[21] See, e.g., Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343, 346-348 (1996).

[22] See, e.g., Boddie v. Connecticut, 401 U.S. 371, 372 (1971) (divorce filing fee); M.L.B. v. S.L.J., 519 U.S. 102, 106-107 (1996) (record fee in parental-rights termination action).

[23] See, e.g., Barrett v. United States, 798 F.2d 565, 568 (2d Cir. 1986) (Administrator of estate brought denial of access claim where testator died as a result of the Army secretly injecting testator with hallucinogenic drugs, and government covered up Army's actions in subsequent litigation); Bell v. Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984) (police cover-up of shooting for twenty years, including planting of evidence and concocting false statements, constituted denial of access to the courts).

establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Monsky v. Moraghan, 1997 U.S. App. LEXIS 36158, at *12 (citations omitted). The essence of a denial of access claim is that a plaintiff must have effectively lost (or was severely hampered in) the ability to file a lawsuit, typically by egregious or systemic violations of due process. Yet Ponterio ably filed his lawsuit in New York state court challenging the denial of his recertification. True, he filed that lawsuit without the benefit of the Board's reasons for his denial. However, under New York law, the Board's failure to set forth reasons for denial of recertification does not violate due process. Marro v. Bartlett, 389 N.E.2d 808 (N.Y. 1979).[24] It follows that if the Board's failure to set forth reasons for denial of recertification did not violate due process, Ponterio's lawsuit based on that recertification was not hampered by any violation of due process (and certainly not such an egregious or systemic violation of due process typically required for a "denial of access" claim). Ponterio's claim, albeit creative, fails because he cannot state "actual injury."[25]

      E. Equal Protection Claim

      Ponterio alleges a "class of one" Equal Protection claim, under the theory that the Board's 2004 denial of his application for recertification was based on Lippman and the Board's "irrational" and "wholly arbitrary" intent to punish him without any basis or legitimate governmental purpose.

      The Second Circuit has recognized such "class of one claims," where the "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001), citing Willowbrook v. Olech,

---

[24] The Board "has nearly unfettered discretion which is not subject to judicial review in the absence of claims of substance that there has been a violation of constitutional or statutory prescription unrelated to the certification process itself." Marro, 389 N.E.2d 808, 809-10. "[I]nasmuch as the function of the certification is that of an initiatory action, rather than that of determining a continuing entitlement, due process requirements are virtually nonexistent." Id. at 812.

[25] It should be noted that if Ponterio brought a direct challenge to the Board's failure to set forth reasons for his denial as violative of Due Process, it would in all likelihood fail. See Marro v. Bartlett, 389 N.E.2d 808; Schwartz v. Mayor's Committee on Judiciary, 816 F.2d 54, 57 (2d Cir. 1987) (no property or liberty right by New York City family court judge to reappointment); Levine v. McCabe, 357 F. Supp. 2d 608, 610 (E.D.N.Y. 2005) (former judge had no property or liberty interest in future judicial hearing officer position); Meyer v. Lippman, 1999 U.S. Dist. LEXIS 8807 (S.D.N.Y. 1999) (judicial hearing officer had no property right to reappointment).

528 U.S. 562, 563 (U.S. 2000); <u>Morron v. City of Middletown</u>, 2006 U.S. Dist. LEXIS 87932, at *19-21 (D. Conn. 2006).

At the outset, Ponterio's Equal Protection claim is not barred by *res judicata* or collateral estoppel, as it stems from the 2004 denial of his application for reconsideration. Ponterio's 2004 denial constitutes "new evidence" which was not available to him when he instituted his state court action in 2003.[26]  See <u>King v. Fox</u>, 418 F.3d 121, 130 (2d Cir. 2005) (noting that availability of new evidence, among other factors, counsels against application of collateral estoppel), <u>citing</u> <u>Gilberg v. Barbieri</u>, 423 N.E.2d 807 (N.Y. 1981).  Similarly, Ponterio's Equal Protection claim is not barred by *Rooker-Feldman*, as the state courts have not previously ruled on his 2004 denial of recertification.

Ponterio has sufficiently stated a "class of one" claim by pleading that the Board and Lippman, at the time of his 2004 denial, possessed an intent to treat him differently from others similarly situated, without any rational basis.  Ponterio has alleged that he was similarly situated to the other retired Justices who were granted recertification in 2004.  It appears plausible that a rational basis for the Board's and Lippman's actions exists – e.g., the Richmond County Bar Association's 2003 recommendation against Ponterio's recertification.  However, on a motion to dismiss, this Court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  <u>Burns v. Cook</u>, 2006 U.S. Dist. LEXIS 77625, at *10, <u>citing</u> <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).  I therefore decline to dismiss Ponterio's Equal Protection claim at this time.

Defendants cite authority that plaintiffs may not bring a retaliation claim pursuant to the Equal Protection clause.  See <u>Bernheim v. Litt</u>, 79 F.3d 318, 323 (2d Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment, and may also be brought under Title VII… we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.") (internal citations omitted); <u>see also</u> <u>Levine v. McCabe</u>, 357 F. Supp. 2d

---

[26] As noted above, although Ponterio is estopped from arguing that Lippman was motivated by personal animus concerning his 2003 denial, he is not so estopped from arguing that Lippman was motivated by personal animus concerning his 2004 denial.

608, 622 (E.D.N.Y. 2005).[27]

However, these prior holdings address retaliation claims in the context of traditional Equal Protection analysis, based on a suspect classification or violation of fundamental rights.  See Bernheim v. Litt, 79 F.3d 318, 323 ("The Fourteenth Amendment guarantee of equal protection is 'a right to be free from invidious discrimination in statutory classifications and other governmental activity.'"), citing Harris v. McRae, 448 U.S. 297, 322 (1980).  Here, Ponterio brings a "class of one" Equal Protection claim, based not on a suspect classification or violation of fundamental rights, but on animus on the part of a government actor.  See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 ("[T]he equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.").  Such animus may include retaliatory animus.  See, e.g., Trihealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 789 (6th Cir. 2005) (noting that plaintiff's "class of one" claim could survive a motion to dismiss where it alleged that plaintiff "was similarly situated to others who received different treatment, and that his disparate treatment was motivated by invidious, retaliatory animus.").  Thus, so long as Ponterio meets the independent requirements of a "class of one" Equal Protection claim, the fact that his "class of one" claim alleges retaliatory activity, or that he concurrently alleges a First Amendment retaliation claim, does not bar him from bringing his "class of one" claim.[28]

Ponterio's "class of one" Equal Protection claim will go forward.  This Court will entertain limited discovery on the issue – namely, if Plaintiff so chooses, the deposition

---

[27] See also, e.g., Watkins v. Bowden, 105 F.3d 1344, 1354-55 (11th Cir. 1997) ("A pure or generic retaliation claim… does not implicate the Equal Protection Clause"), citing Ratliff v. DeKalb County, 62 F.3d 338, 340 (11th Cir. 1995); Gray v. Lacke, 885 F.2d 399, 414 (7th Cir. 1989) (plaintiff's "right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause").

[28] Although the Second Circuit has not ruled squarely on the issue, district courts in this Circuit have not ruled to the contrary.  See Morron v. City of Middletown, 2006 U.S. Dist. LEXIS 87932, at *19-21 (D. Conn. 2006) (ruling that because First Amendment retaliation claim survived motion to dismiss, "class of one" Equal Protection claim survived as well); Russo v. City of Hartford, 184 F. Supp. 2d 169, 191 (D. Conn. 2002) (denying motion to dismiss "class of one" Equal Protection claim, as well as First Amendment retaliation claim); see also Levine v. McCabe, 357 F. Supp. 2d 608, 622 (dismissing Equal Protection retaliation claim, citing Bernheim, but analyzing "class of one" claim separately); Santossio v. City of Bridgeport, 2004 U.S. Dist. LEXIS 21109, *14-15 (D. Conn. 2004) (holding that plaintiff could not state retaliation claim under Equal Protection clause, but analyzing "class of one" Equal Protection claim separately).

of Judge Lippman at a convenient time, but within thirty days from the date of this Opinion. Thereafter, each side may brief what has been gleaned from the deposition and submit ten pages or less, and the deposition transcript, to the Court. If there is a material issue of fact, the matter will go forward. If not, I will resolve the issue in Defendants' favor. Either side may request oral argument by calling the Court's chambers.

Ponterio's motion for an injunction, however, is denied as to his Equal Protection claim. Ponterio's delay of two years in bringing his motion for injunctive relief on his Equal Protection claim counsels against a finding of "irreparable harm." Shady v. Tyson, 5 F. Supp. 2d 102, 109 (E.D.N.Y. 1998), citing Majorica, S.A. v. R.H. Macy & Co., 762 F.2d 7, 8 (2d Cir. 1985). Additionally, I cannot say at this time that Ponterio shows a likelihood of "success on the merits." See Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005).[29]

## IV.   CONCLUSION

Because Plaintiff's First Amendment claim and state law retaliation claim are barred by *res judicata* and collateral estoppel principles, and alternatively fail on their merits, I must dismiss those claims. Because Plaintiff's "denial of access" claim fails on its merits, I must dismiss that claim. I am denying Defendants' motion to dismiss as to Plaintiff's Equal Protection claim. I am denying Plaintiff's motion for a preliminary injunction on all grounds.

The Clerk of the Court is directed to close these motions and remove them from my docket.

**SO ORDERED.**

**January ___, 2007**
**New York, New York**

U.S.D.J.

[29] Additionally, because Ponterio seeks a mandatory injunction – i.e., an order "alter[ing] the status quo by commanding some positive act," in this case, an order annulling the Board's denial of certification and certifying him to the bench – he must meet a higher standard, i.e. "a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." See Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995). Thus, Ponterio cannot succeed in gaining an injunction by showing "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Id. at 33. I do not find that Ponterio makes such a clear showing here.

18