UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
FRANK V. PONTERIO,

                       **Plaintiff,**

   - against -

JUDITH S. KAYE, Chief Judge of the State of New
York, JONATHAN LIPPMAN, Chief Administrative
Judge of the Courts, JOHN T. BUCKLEY, Presiding
Justice of the Appellate Division, First Department,
A. GAIL PRUDENTI, Presiding Justice, Appellate
Division, Second Department, ANTHONY V.
CARDONA, Presiding Justice, Appellate Division,
Third Department, EUGENE F. PIGOTT, JR.,
Presiding Justice, Appellate Division, Fourth
Department, and THE ADMINISTRATIVE BOARD
OF THE COURTS,

                       **Defendants.**

06 Civ. 6289 (HB)

OPINION
AND ORDER

------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Frank Ponterio ("Plaintiff" or "Ponterio") brings this motion for reconsideration, pursuant to Local Civil Rule 6.3, of this Court's January 22, 2007 decision granting the motion of Defendants Judith Kaye, Jonathan Lippman, *et. al.* (collectively, "Defendants") to dismiss Ponterio's "denial of access to courts" and First Amendment claims brought under 42 U.S.C. § 1983. See Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105 (S.D.N.Y. Jan. 22, 2007).

      Because Ponterio's arguments for reconsideration provide nothing new, Ponterio's motion for reconsideration is denied.

### I.    BACKGROUND

      Familiarity with the facts of Ponterio's complaint, and those facts judicially noticed, is presumed. See Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *4-14.

    A.  Dismissal of Ponterio's "Denial of Access" Claim

Ponterio initially alleged that the Administrative Board of the Courts' failure to set forth reasons for its 2003 denial of his application for recertification constituted a "denial of access to the courts," in violation of the Fifth and Fourteenth Amendments, in that it wholly prejudiced his initial New York state court lawsuit to the extent that he was effectively denied the chance to bring the lawsuit at all.

I rejected Ponterio's argument and dismissed his claim. I noted that "the Second Circuit has recognized a right of access to the courts, stemming from the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *31, citing Monsky v. Moraghan, 1997 U.S. App. LEXIS 36158, at *11 (2d Cir. 1997). Typically, I noted, "denial of access" claims fall into one of two categories. "First, litigants may claim that 'systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits.'" Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *31, citing Christopher v. Harbury, 536 U.S. 403, 413 (2002) ("Harbury"). "Thus, prisoners have sued for access to a law library, n21 or indigent plaintiffs have sued for waivers of filing fees." Id., citing Harbury, 536 U.S. 403, 413. Secondly, litigants may claim that they have irrevocably lost the ability to file a lawsuit, typically because of a massive governmental cover-up denying plaintiffs the ability to gather evidence.[1] Id., citing Harbury, 536 U.S. 403, 413.

However, I held that because Ponterio ably filed his state court lawsuit, Defendants caused Ponterio no "actual injury" (i.e. actions that hindered his ability to file a legal claim). Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *33-34. Although Ponterio filed his state court lawsuit without the benefit of the Board's reasons for his denial, the Board's failure to provide its reasoning did not itself violate due process. Id., citing Marro v. Bartlett, 389 N.E.2d 808 (N.Y. 1979) (retired New York state Justice had no due process rights to reasons for denial of his recertification).[2] *A fortiori*, if the

---

[1] See, e.g., Barrett v. United States, 798 F.2d 565, 568 (2d. Cir. 1986) (administrator of estate brought "denial of access" claim where testator died as a result of the Army secretly injecting testator with hallucinogenic drugs, and government covered up Army's actions in subsequent litigation); Bell v. Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984) (police cover-up of shooting for twenty years, including planting of evidence and concocting false statements, constituted "denial of access" to the courts).

[2] Subsequent federal decisions have generally affirmed the Marro Court's reasoning that because retired Justices have no property or liberty right in recertification, retired Justices have no procedural due process right to the reasons for their denial. See, e.g., Schwartz v. Mayor's Committee on Judiciary, 816 F.2d 54,

Board's failure to provide its reasoning did not violate due process, the Board's failure to do so did not establish the type of egregious or systemic violation of due process that is typically required for a "denial of access" claim.  Id.

      b.  Ponterio's Motion for Reconsideration

Ponterio now moves this Court to reconsider its prior decision primary on two grounds.  First, Ponterio notes correctly that he brought a "denial of access" claim, not a due process claim – and thus, he argues, Marro does not mandate dismissal of his "denial of access claim."  Secondly, Ponterio argues that the Harbury Court did not explicitly circumscribe "denial of access" claims into the two above-mentioned descriptive categories (i.e. systemic official action or massive governmental cover-ups).[3]

## II.  STANDARD OF REVIEW

The decision to grant or deny a motion for reconsideration is within the "sound discretion" of the district court.  See, e.g., Davis v. The Gap, Inc., 186 F.R.D. 322, 324 (S.D.N.Y. 1999).  To succeed on a motion for reconsideration under Local Civil Rule 6.3, a party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion."  Id. at 324.  A court will not generally reconsider issues properly disposed of previously.  Id.

## III.  DISCUSSION

Ponterio first argues that Marro does not mandate dismissal of his "denial of access claim."  Essentially, Ponterio argues, although Marro holds that retired Justices like himself have no due process rights to the Board's reasons for their denial, Marro does not foreclose that "concealment" of a nefarious scheme to impede a lawsuit might constitute "denial of access."  Indeed, the Marro Court noted that its decision did not

---

57 (2d Cir. 1987) (no property or liberty right by New York City family court judge to reappointment); Levine v. McCabe, 357 F.Supp.2d 608, 610 (E.D.N.Y. 2005) (former judge had no property or liberty interest in future judicial hearing officer position); Meyer v. Lippman, 1999 U.S. Dist. LEXIS 8807 (S.D.N.Y. 1999) (judicial hearing officer had no property right to reappointment).

[3] Ponterio additionally argues that if his denial of access claim survives, his First Amendment claim, which I dismissed as barred by *res judicata* or collateral estoppel, see Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *20-31, survives as well. Essentially, Ponterio argues, because he was "denied access" in state court, he never had a "full and fair opportunity" to bring his state court lawsuit, and *res judicata* principles do not apply.

3

foreclose certain constitutional claims (such as, for example, Ponterio's Equal Protection claim that I allowed to go forward following a motion to dismiss). See Marro v. Bartlett, 389 N.E.2d 808, 812 (allowing that "claims of substance that there had been… promotion of a constitutionally impermissible purpose, unrelated to the certification process" might be cognizable).

The flaw in Ponterio's argument, however, is that he characterizes as affirmative "concealment" what the Marro Court characterized as "failure to provide reasons for denial." And, of course, the evidence of this "concealment" is itself concealed. Thus, if I follow Ponterio's argument, any retired Justice denied reconsideration could allege constitutional "denial of access" and survive a motion to dismiss. This is, I believe, exactly the sort of litigation the Marro Court meant to foreclose. See Marro v. Bartlett, 389 N.E.2d 808, 812 ("the Administrative Board… had very nearly unfettered discretion… to grant applications of former Judges for certification, a discretion which was not subject to judicial review…").

Essentially, Ponterio attempts to dress up a garden-variety procedural due process claim in "denial of access" clothing. As I held previously, if Ponterio was not denied due process when the Board failed to give its reasons, *a fortiori*, Ponterio was not "denied access to the courts" (at least, not without some independent basis for his allegations of a nefarious scheme, aside from the Board's mere failure to provide its reasons for its denial).[4]

Secondly, Ponterio argues that Harbury does not explicitly circumscribe "denial of access" claims into the two categories of systemic official action or massive governmental cover-ups. Indeed, Ponterio cites cases where allegations of "denial of access" centering on allegedly retaliatory municipal land-use actions were deemed

---

[4] Ponterio also makes the novel argument that Marro violates the Supremacy Clause by essentially immunizing state officers (here, the Administrative Board of the Courts) from violations of unconstitutional conduct. See, e.g., Gronowski v. Spencer, 424 F.3d 285, 297 (2d Cir. 2005) (Court held that conformity with state civil service retaliation laws is not dispositive of constitutional claims, stating, "[t]he Supremacy Clause… guarantees that state law will not preempt or otherwise erode § 1983 causes of action and state law may not be used to immunize conduct violative of § 1983).

Ponterio's argument misses the mark. As Ponterio points out in a different context, the Marro Court did not foreclose separate constitutional claims against the Administrative Board of the Courts. See Marro v. Bartlett, 389 N.E.2d 808, 812. The Marro Court simply held that the Board's failure to provide reasons for a denial of recertification does not violate due process. Ponterio's insurmountable problem is that that failure, by itself, cannot state a separate constitutional claim for "denial of access."

sufficient to survive a motion to dismiss. See, e.g., Harrison v. Springdale Water & Sewer Com., 780 F.2d 1422, 1428 (8th Cir. 1986); Miner v. Sheriden, 1996 U.S. Dist. LEXIS 22337, at *14-15 (D. Conn. 1996) (in § 1983 action, plaintiffs' allegation that city "falsely accused [plaintiffs] of violating zoning ordinances" where plaintiffs had complained to local zoning board was sufficient to state a claim for "denial of access"). That said, Ponterio's cited cases predate the Harbury Court's articulation of the contours of a "denial of access" claim (i.e., the two categories of "systemic official action" or "massive governmental cover-ups"). See Harbury, 536 U.S. 403, 413. It is unclear if Ponterio's cited cases remain good law.

More fundamentally, Ponterio attempts to radically expand the scope of a "denial of access" claim beyond what the Harbury Court envisioned, and what sound policy dictates. If Ponterio can bring this claim for "denial of access," based on unsupported and conclusory allegations, anyone, it seems, could bring a claim for "denial of access" after losing a case against the Government and survive a motion to dismiss. It is difficult to imagine, following Harbury, that the Board's failure to provide reasons for its denial of Ponterio's recertification states a claim for "denial of access to the courts."

## IV. CONCLUSION

Because Plaintiff Ponterio's arguments for reconsideration fail to meet the requisite test for such motions, Ponterio's motion for reconsideration of this Court's dismissal of his "denial of access" and First Amendment claims is denied.

Regarding Ponterio's Equal Protection Claim, further discovery may commence on the date of this order, and conclude on May 21, 2007. Fully briefed dispositive motions are due by July 6, 2007. Trial, if one is necessary, will commence during the month of September 2007.

The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**
April 5, 2007
New York, New York

U.S.D.J.

5