UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
FRANK V. PONTERIO,                                              :
                                                                :
                                 Plaintiff,          :
                                                                :       06 Civ. 6289 (HB)
        - against -                                          :
                                                                :       <u>OPINION</u>
                                                                :       <u>AND</u> <u>ORDER</u>
JUDITH S. KAYE, Chief Judge of the State of New    :
York, JONATHAN LIPPMAN, Chief Administrative   :
Judge of the Courts, JOHN T. BUCKLEY, Presiding    :
Justice of the Appellate Division, First Department,  :
A. GAIL PRUDENTI, Presiding Justice, Appellate      :
Division, Second Department, ANTHONY V.            :
CARDONA, Presiding Justice, Appellate Division,     :
Third Department, EUGENE F. PIGOTT, JR.,           :
Presiding Justice, Appellate Division, Fourth         :
Department, and THE ADMINISTRATIVE BOARD   :
OF THE COURTS,                                         :
                                                                :
                                 Defendants.       :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

        Plaintiff Frank V. Ponterio ("Plaintiff" or "Ponterio"), a retired New York State Supreme Court Justice, brought this action pursuant to 42 U.S.C. § 1983. Ponterio's remaining claim is that Defendants Judith S. Kaye, Chief Judge of the State Of New York, Jonathan Lippman, Chief Administrative Judge of the Courts, John T. Buckley, Presiding Justice of the Appellate Division, First Department, A. Gail Prudenti, Presiding Justice, Appellate Division, Second Department, Anthony V. Cardona, Presiding Justice, Appellate Division, Third Department, Eugene F. Pigott, Jr., Presiding Justice, Appellate Division, Fourth Department, and the Administrative Board of the Courts (collectively, "Defendants") violated his rights to equal protection of the laws under the Fourteenth Amendment of the United States Constitution when the Administrative Board of the Courts, in 2004, declined to reconsider its 2003 denial of Ponterio's application for recertification as a Supreme Court Justice.

        Defendants move for summary judgment on Ponterio's Equal Protection claim. For the reasons articulated below, Defendants' motion is GRANTED, and Ponterio's

equal protection claim is accordingly dismissed.

## I.   BACKGROUND

A.  Certification and Recertification of New York Supreme Court Justices

By way of background, pursuant to Article VI, Section 25(b) of the New York Constitution, Justices of the Supreme Court are required to retire on the last day of December in the year in which they reach the age of seventy.  See N.Y. CONST., Art. VI, § 25(b).[1]  They may, however, be certified by the Administrative Board of the Courts[2] to serve as retired Justices for a two-year term, and may be recertified for two additional two-year terms, for a total of six years, until they reach the age of 76.[3]  Id.; see also N.Y. JUDICIARY LAW § 115.  To certify a Justice, the Board must find as a threshold matter that a Justice possesses the requisite "mental and physical capacity," and that his services are "necessary."  N.Y. JUDICIARY LAW § 115(1).  Once that finding is made, however, the Board's decision as to certification is discretionary.[4]

---

[1] "Each judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of the county court, judge of the surrogate's court, judge of the family court, judge of a court for the city of New York established pursuant to section fifteen of this article and judge of the district court shall retire on the last day of December in the year in which he or she reaches the age of seventy."  N.Y. CONST., Art. VI, § 25(b).

[2] The Administrative Board of the Courts consists of the Chief Judge of the New York Court of Appeals and the Presiding Justices of the four Appellate Divisions.  N.Y. CONST., Art. VI, § 28(a); N.Y. JUDICIARY LAW § 210(2).

[3] "Each such former judge of the court of appeals and justice of the supreme court may thereafter perform the duties of a justice of the supreme court, with power to hear and determine actions and proceedings, provided, however, that it shall be certificated in the manner provided by law that the services of such judge or justice are necessary to expedite the business of the court and that he or she is mentally and physically able and competent to perform the full duties of such office.  Any such certification shall be valid for a term of two years and may be extended as provided by law for additional terms of two years.  A retired judge or justice shall serve no longer than until the last day of December in the year in which he or she reaches the age of seventy-six."  N.Y. CONST., Art. VI, § 25(b).

N.Y. JUDICIARY LAW § 115 further provides: "Any justice of the supreme court, retired pursuant to subdivision b of section twenty-five of article six of the constitution, may, upon his application, be certified by the administrative board for service as a retired justice of the supreme court upon findings (a) that he has the mental and physical capacity to perform the duties of such office and (b) that his services are necessary to expedite the business of the supreme court."  N.Y. JUDICIARY LAW § 115(1).  "Any such certification shall be valid for a term of two years beginning on the date of filing the certificate. At the expiration of such term the retired justice may be certified for additional terms of two years each by the administrative board upon findings of continued mental and physical capacity and need for his services. No retired justice may serve under any such certification beyond the last day of December in the year in which he reaches the age of seventy-six."  N.Y. JUDICIARY LAW § 115(2).

[4] See Marro v. Bartlett, 389 N.E.2d 808, 809 (N.Y. 1979) (the Board "has nearly unfettered discretion which is not subject to judicial review in the absence of claims of substance that there has been a violation of constitutional or statutory prescription unrelated to the certification process itself.").

The certification process for retired Justices begins in February or March of the year before their term of certification, when the Chief Administrative Judge sends eligible sitting Justices or sitting retired Justices a letter advising them of their eligibility for recertification and an application form.[5]  See Affidavit of Michael Colodner, May 18, 2007 ("Colodner Aff.") ¶¶ 9-10.  Only sitting Justices are sent letters.  Id. at ¶ 10.  The Chief Administrative Judge also sends letters to the bar associations within the judicial District where the Justices reside to solicit their views.  Colodner Aff. ¶ 12.  Additionally, District Administrative Judges are requested to provide a report evaluating the judicial performance of the Justices in that District eligible for recertification.  Id.

Thereafter, the Administrative Board meets to consider applications for certification, with the aforementioned information at its disposal.  Colodner Aff. ¶ 13.  Upon the Administrative Board's exercise of its discretion in selecting Justices, the Administrative Board notifies Justices of its decision.  Id. at ¶ 14.  Justices who are certified begin their term on January 1 of the following year.  Id.

B.  Ponterio's Judicial Service

On November 6, 1996, Plaintiff Ponterio was elected to a 14-year term as a Justice of the Supreme Court in the Second Judicial District of New York, effective January 1, 1997.  Plaintiff's Complaint, Aug. 18, 2006 ("Pl. Compl.") ¶ 4;[6] see also Colodner Aff. ¶ 15.  Ponterio was assigned to a matrimonial part (Part 7) of Supreme Court in Richmond County.  Pl. Compl. ¶ 9; see also Ponterio v. Kaye, 25 A.D.3d 865, 866 (N.Y. App. Div. 2006).  Subsequently, a second matrimonial part was created, both matrimonial parts were consolidated at one facility, and Part 7 became a general civil part.  See Ponterio v. Kaye, 25 A.D.3d at 866.  In September 1998, Ponterio was removed from the matrimonial part and subsequently heard civil matters, as well as a limited

---

[5] After the Justice applies for certification, the Chief Administrative Judge sends a follow-up letter containing arrangements for medical and psychological examinations to be held during April or May. Colodner Aff. ¶ 11.  Applicants are also required to execute consent forms to release medical records and State Commission on Judicial Conduct records.  Id.

[6] On Monday May 7, 2007, Plaintiff filed an amended complaint without leave of Court, apparently after Defendant answered Plaintiff's original complaint that same day.  (Although the exact timing is not clear, and Plaintiff's counsel dated the amended complaint May 4, 2007, the Clerk of the Court entered Defendant's answer on May 7, 2007, and Plaintiff's amended Complaint on May 10, 2007.)  Pursuant to Fed. R. Civ. P. 15(a), leave of court is required to amend a complaint after answer and here no permission to amend was sought nor granted, hence I will refer in this opinion to Plaintiff's original complaint, except where noted.

number of matrimonial cases.  See id.

Prior to that transfer, Ponterio alleges, inter alia, that in March and April 1998, Justice Betty Ellerin sought to replace him with a female judge in order to influence matrimonial decisions, and that he informed Court of Appeals Judge Vito Titone that he would expose Justice Ellerin's "scheme" to the press.  Pl. Compl. ¶¶ 11-12; see generally Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *5-8 (S.D.N.Y. 2007) (dismissing Ponterio's First Amendment and "denial of access to the courts" claims).

Ponterio subsequently completed his term of office as a Supreme Court Justice on December 31, 2001 without incident, as he reached the mandatory retirement age of 70 during that year.  See Colodner Aff. ¶ 15; N.Y. CONST., Art. VI, § 25(b); N.Y. JUDICIARY LAW § 115.  Prior to Ponterio's completion of his term, Chief Administrative Judge Jonathan Lippman wrote Ponterio on February 13, 2001, advised him that he was eligible for certification as a retired Supreme Court Justice for a two-year term beginning January 1, 2002, and enclosed an application for certification.  Colodner Aff. ¶ 16.  Ponterio submitted the application for certification, which the Administrative Board approved.  Id.  Ponterio accordingly began his two-year term on January 1, 2002.  Id.

### C.  2003 Denial of Certification

On February 7, 2003, Lippman again wrote to Ponterio, advised him that he was eligible for recertification as a retired Justice for another two-year term commencing January 1, 2004, and enclosed an application for recertification.  Colodner Aff. ¶ 17.  Ponterio submitted the application for recertification.  Id.  Lippman solicited the views of various Administrative Judges and bar associations in the normal course.  Id.  The Richmond County Bar Association recommended against Ponterio's recertification.  See Ponterio v. Kaye, 25 A.D.3d at 867.  On September 30, 2003, the Administrative Board met and declined to approve the recertification of Ponterio for another two-year term.  Colodner Aff. ¶ 19; Pl. Compl. ¶ 17.

### D.  2004 Denial of Reconsideration

On May 28, 2004, and again on June 28, 2004, Ponterio requested by letter that he be permitted to reapply for recertification.  Colodner Aff. ¶ 19, Ex. A.  Because Ponterio was no longer a sitting Supreme Court Justice, Chief Administrative Judge Lippman requested the legal opinion of Michael Colodner, Counsel to the Administrative Board of

the Courts and the Office of Court Administration, regarding Ponterio's request. Colodner Aff. ¶ 21.

Colodner provided a memorandum to Judge Lippman that outlined the two prior occasions when counsel to the Board had considered the issue of whether a retired Supreme Court Justice, not currently sitting on the bench, could be recertificated. See Memorandum of Michael Colodner, June 8, 2004 ("Colodner Memo."), at Colodner Aff., Ex. D.

In 1979, Justice Harry Frank, who had been rejected for certification in 1975 (along with a number of other Justices) because of a fiscal crisis, had inquired into reapplying for certification. See Memorandum of Bill Bulman, Apr. 26, 1979 ("Bulman Memo."), at Colodner Aff., Ex. B. Then-Counsel to the Administrative Board Bill Bulman, interpreting the relevant constitutional and statutory provisions, concluded that it would be lawful for the Board to grant an initial two-year certification to a retired Justice (such as Frank) despite a gap in service between the Justice's mandatory retirement and his initial certification as a retired Justice. Id. Bulman concluded, however, that recertification would not be lawful where there was a gap between a retired Justice's initial certification and recertification, or recertification and second recertification.[7] Id. Ultimately, Justice Frank did not reapply for certification, and the matter was dropped. See Colodner Aff. ¶ 25.

In 1982, Justice Alexander Berman requested to apply for recertification two and a half years after he resigned for health reasons in the middle of his first term after being initially certified. See Memorandum of Paul A. Feigenbaum, Aug. 10, 1982 ("Feigenbaum Memo."), at Colodner Aff., Ex. C. Then-Counsel to the Administrative Board Paul Feigenbaum noted that "in effect, Justice Berman accepted a first certification, declined to apply for a second certification, and now seeks a certification for his final two eligible years." Id. While Feigenbaum noted that "the purpose and spirit" of the relevant constitutional and statutory provisions would "favor the possibility of certification," a "literal reading… could lead to a contrary conclusion." Id. Feigenbaum

---

[7] Bulman noted that the language of Article VI, Section 25(b) of the New York Constitution provided that "[a]ny such certification shall be valid for a term of two years and may be extended as provided by law for additional terms of two years." (emphasis Bulman's). See Bulman Memo. at 5. Bulman interpreted this to mean that the Constitution's literal text provided for extensions of an initial certification, but not a new recertification after some gap in service. Id.

5

ultimately referred the matter to the Administrative Board without a recommendation. Id. The Board discussed Justice Berman's application and recertificated him for a final two-year term. Colodner Aff. ¶ 27.

Colodner attached both former Counsel's opinions to his memorandum to Lippman. See Colodner Memo. Colodner concluded that the New York Constitution did not foreclose a retired Justice (such as Ponterio) from reapplying for recertification. Id. at 2. However, Colodner concluded that the specific question of whether to recertificate Ponterio as a matter of policy, given that Ponterio had been denied recertification on the merits, was a separate matter.[8] Id. Colodner referred that question to the Board without a recommendation.[9] Id.

The Board considered Ponterio's request at its August 10, 2004 meeting. See Colodner Aff. ¶ 31. On Colodner's recommendation, the Board considered Ponterio's request as a request to reconsider its 2003 denial of Ponterio's recertification, as Ponterio was "off-cycle" and would not be allowed to reapply during that current year under normal circumstances. See Colodner Aff., Ex. E (Minutes of August 10, 2004 meeting), ¶ 8; Colodner Memo at 2 n.2. The Board denied Ponterio's request. See Colodner Aff., Ex. E. The Board informed Ponterio of its denial by letter dated August 16, 2004. See Colodner Aff. ¶ 32, Ex. F.

At its October 5, 2004 meeting, the Board approved the applications of forty retired Justices. These Justices were all currently sitting Justices and none of whom had previously been denied certification or recertification. See Colodner Aff. ¶ 33, 36, Ex. G (Minutes of Oct. 2, 2004 Meeting)..

E.  Procedural History of Ponterio's Federal Litigation

Ponterio filed this action on August 18, 2006. On January 22, 2007, upon Defendants' motion to dismiss, I dismissed Ponterio's First Amendment and state law retaliation claims based on the Board's 2003 denial as barred by principles of *res judicata*

---

[8] "It is one thing to reconsider justices who may have been rejected for health reasons if their health later improves, or who may have been rejected for fiscal reasons if our coffers later become replenished. It is another thing to reconsider justices who were rejected on the merits, as ordinarily there could be no meaningful change in circumstances absent something extraordinary." See Colodner Memo at 2.

[9] "Justice Ponterio's letter should be presented to the Administrative Board for whatever action it deems appropriate." Colodner Memo. at 2.

6

and collateral estoppel, and alternatively as failing on their merits.[10]  See generally Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *21-31.  I dismissed Ponterio's "denial of access to the courts" claim on its merits.  Id. at *31-35.  I allowed Ponterio's "class of one" Equal Protection claim, based on the Board's 2004 denial of reconsideration of its 2003 decision, to go forward,[11] see id. at *35-41, and allowed Ponterio to take the deposition of Defendant Judge Jonathan Lippman, then the Chief Administrative Judge, now the Presiding Justice of the Appellate Division, First Department, which occurred on February 21, 2007.  See id. at *41-42; see Affidavit of Constantine Speres, May 17, 2007 ("Speres Aff."), Ex. E.

On April 5, 2007, I denied Ponterio's motion for reconsideration of my dismissal of his First Amendment and "denial of access" claims.  Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 25165 (S.D.N.Y. 2007).  I set trial for September, and allowed further discovery on Ponterio's Equal Protection claim.  Id. at *11.  Ponterio subsequently took the deposition of Michael Colodner, Counsel to the Administrative Board, on June 15, 2007.  See Affidavit of John Eiseman, July 9, 2007 ("Eiseman Aff."), Ex. A.

On Monday May 7, 2007, Plaintiff filed an amended complaint without leave of Court, apparently after Defendants filed its answer.  For what it is worth, Ponterio alleged additional facts designed to broaden the scope of his Equal Protection claim – namely, that Ponterio sought to apply for recertification not only in 2004, but in 2005, 2006, and 2007, that Defendants knew of Ponterio's desire, and that Judge Lippman refused to provide Ponterio with the proper forms to do so.  See Amended Complaint, May 4, 2007 ("Pl. Am. Compl.") ¶¶ 40-49.  Ponterio also alleged animus on the part of Defendants Kaye and Lippman, which he had not done in his original Complaint.  Pl. Am. Compl. ¶ 44.[12]

On May 22, 2007, Defendants brought the instant motion for summary judgment.  Defendants move to dismiss Ponterio's remaining Equal Protection claim on the grounds that 1) Ponterio fails to state a "class of one" Equal Protection claim, because he cannot

---

[10] Ponterio previously brought a discrimination and retaliation action in New York state court.  See, e.g., Ponterio v. Kaye, 25 A.D.3d 865, 866.

[11] I denied Ponterio's application for a preliminary injunction on his Equal Protection claim.  See Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *41.

[12] Ponterio also, despite my dismissal of his First Amendment, state law retaliation, and "denial of access" claims, identically re-alleged those claims in their entirety.  See Pl. Am. Compl. ¶¶ 21-37, 50-58.

7

make a *prima facie* case that he is "similarly situated" to other retired Justices, and 2) Defendants are entitled to qualified immunity. Ponterio opposed, and cross-moved for a continuance to allow for additional discovery.

## II.     STANDARD OF REVIEW

A court will not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the burden of demonstrating the absence of a material factual question. Anderson v. Liberty Lobby, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202. If the moving party meets that burden, the non-moving party must then come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), citing Fed. R. Civ. P. 56(e).[13] In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities, and draw all inferences, against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). However, a disputed issue of material fact alone is insufficient to deny a motion for summary judgment; the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586; see also Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).

## III.     DISCUSSION

I will address Defendants' two arguments – first, that Ponterio fails to state an Equal Protection claim, and second, that Defendants are entitled to qualified immunity – in turn.

---

[13] The non-moving party generally may not meet the burden to come forward with specific facts by resting on the pleadings. Leon v. Murphy, 988 F.2d 303, 308 (2d Cir. 1993).

A.  <u>Ponterio's "Class of One" Equal Protection Claim</u>

The Equal Protection Clause requires that the government treat all similarly situated people alike. <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001), <u>citing</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985).  While the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, where, as here, the plaintiff does not allege membership in such a class, he or she can still prevail in what is known as a "class of one" equal protection claim.[14] <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005), <u>citing</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000) (per curiam) (a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

In order to succeed on a "class of one" claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high. <u>Neilson v. D'Angelis</u>, 409 F.3d at 104.  A plaintiff must demonstrate that he was "treated differently than someone who is *prima facie* identical in all relevant respects." <u>Id</u>., <u>citing</u> <u>Purze v. Village of Winthrop Harbor</u>, 286 F.3d 452, 455 (7th Cir. 2002).  Accordingly, a plaintiff in a "class of one" case must show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.[15] <u>Id</u>. at 105.

---

[14] <u>See also</u> <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d at 499 ("we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."), <u>citing</u> <u>LeClair v. Saunders</u>, 627 F.2d 606, 608-10 (2d Cir. 1980).

[15] Indeed, "[t]his showing is more stringent than that used at the summary judgment stage in the employment discrimination context." <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006), <u>citing</u> <u>Neilson v. D'Angelis</u>, 409 F.3d at 105.  This is because "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff" in a class-of-one case "is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose--whether personal or otherwise--is all but certain." <u>Id</u>., <u>citing</u> <u>Neilson v. D'Angelis</u>, 409 F.3d at 105; <u>see also</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. at 565.

Generally, whether parties are similarly situated is a fact-intensive inquiry. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006), citing Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d at 499 n.2.  A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation, however, where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated.  Id.  Such is the case here.

Here, Ponterio has failed to identify any retired Justice who is substantially similar to him, let alone someone who is *prima facie* identical in all relevant respects. The most relevant distinction between Ponterio and all other retired Justices whose applications were considered in 2004 is that Ponterio was denied recertification on the merits, unlike all the other Justices considered.  It is difficult, as Ponterio essentially argues, to term that distinction as not "relevant."

As Defendants note, Ponterio was also not a sitting Justice when he requested recertification in 2004, unlike the other applicants.  But even if one compares Ponterio to Justices Frank or Berman, whom the Board had previously considered when they were not currently sitting Justices, Ponterio differs because he was denied recertification on the merits.[16]  As Colodner correctly advised the Board, once Ponterio was denied on the merits, the Board's decision to reconsider that denial was a matter of "policy."  Ponterio accordingly fails to raise the inference that he was "intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose--whether personal or otherwise--is all but certain."[17]  See Neilson v. D'Angelis, 409 F.3d at 104; see also Blackhawk Sec., Inc. v. Town of Hamden, 2005 U.S. Dist. LEXIS 15891, at *15-16 (D. Conn. 2005) ("the relevant question is whether [Plaintiffs] and [comparators] are so similar that *no rational person* could regard their differential treatment as justified on the basis of a legitimate governmental policy.") (emphasis intact).

In short, Ponterio points to no Justice like himself – past, present, or hypothetical

---

[16] As Defendants also note, Ponterio was "off-cycle" when he requested recertification in 2004, unlike the other applicants for certification or recertification.

[17] Although the Board did not provide Ponterio with a reason for its denial of recertification in 2003, nor its 2004 decision not to reconsider that denial – nor was it required to, see Marro v. Bartlett, 389 N.E.2d 808, 809 – a rational reason for its denial appears to exist, i.e. the Richmond County Bar Association's 2003 recommendation against Ponterio's recertification.

– who had been denied certification or recertification on the merits and was subsequently treated differently than Ponterio.[18]  See Fusco v. City of Rensselaer, 2006 U.S. Dist. LEXIS 24333 (N.D.N.Y. 2006) (where Plaintiff failed to identify any person substantially similar to him, broad, conclusory allegations were insufficient to withstand summary judgment).  No rational juror could find that Ponterio meets the first part of the "onerous standard" set by the Circuit in Neilson.  See Blackhawk Sec., Inc. v. Town of Hamden, 2005 U.S. Dist. LEXIS 15891, at *16, citing Neilson v. D'Angelis, 409 F.3d at 105.  Accordingly, Ponterio's "class of one" claim is dismissed.[19]

### B. Qualified Immunity

A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was "objectively legally reasonable... in light of the legal rules that were clearly established at the time it was taken."  Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002) (internal citations omitted).[20]

---

[18] Even if Ponterio's allegations in his Amended Complaint regarding 2005, 2006, and 2007 were accepted, the "similarly situated" inquiry would apparently not change.  Ponterio, as noted, has produced no evidence of any retired Justice at any time (including 2005, 2006, or 2007) who was denied on the merits and subsequently treated differently by the Board than Ponterio.

[19] To the extent that Ponterio alleges a LeClair claim based on the animus or malice of Defendants, see Pl. Am. Compl. ¶ 44, Ponterio has provided no evidence aside from his conclusory, self-serving allegations, even after taking the deposition of Judge Lippman and Michael Colodner, of any animus or malice on the part of Lippman (or the Board in general) in connection with the Board's 2004 decision not to reconsider its 2003 denial of Ponterio's recertification on the merits.  See Bizarrro v. Miranda, 394 F.3d 82, 86-88 (2d Cir. 2005) (dismissing claim of "animus," even where anger was present, because anger was connected to legitimate governmental objectives), citing LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980).

Indeed, as I noted in my Opinion regarding Defendants' motion to dismiss, five years passed between Ponterio's allegations regarding Justice Ellerin and his 2003 denial, during which time the Board granted Ponterio's first application for certification as a retired Justice in 2001.  See Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 4105, at *27-28.  It was only after the Richmond County Bar Association recommended against Ponterio's recertification that the Board denied certification to Ponterio.  Leaving aside the fact that Ponterio has produced no evidence of animus, the Board's decision to deny Ponterio recertification based on that negative recommendation appears on its face to be rationally related to a legitimate government objective.

In sum, for the reasons stated in this note and note 18, supra, assuming for argument's sake the Amended Complaint was filed timely, it would have to be dismissed as futile in any event.

[20] Because the immunity not only protects against a judgment for damages but also "is in part an entitlement not to be forced to litigate," early resolution of the qualified immunity defense is encouraged, and a defendant may properly move for summary judgment dismissing the plaintiff's claim on that basis

In determining whether a particular right was clearly established at the time defendants acted, this Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.  Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted).

Here, Defendants' actions in 2004 were objectively reasonable in light of the legal rules that were clearly established at the time.  No decisional law had, at the time, held that a Justice such as Ponterio might win an "class of one" Equal Protection claim stemming from the Board's decision not to reconsider its denial of a Justice's certification.  Rather, the New York Court of Appeals had held that the discretion of the Administrative Board to certify retired Justices was "nearly unfettered."  Marro v. Bartlett, 389 N.E.2d 808, 809.   Indeed, the Board asked for the advice of counsel regarding Ponterio's situation.  Counsel apprised the Board of the relevant constitutional and statutory law (including the Marro precedent) and advised the Board that the question of whether to reconsider Ponterio's denial was committed to its discretion.  The Board declined to reconsider Ponterio's denial, without providing reasons (again, in accordance with Marro, see Marro at 813).  Reliance on advice of counsel may, in some circumstances, suffice to establish qualified immunity.  Lukas v. Triborough Bridge & Tunnel Auth., 1993 U.S. Dist. LEXIS 21065, at *13 (E.D.N.Y. 1993).  Such is the case here, where counsel's advice objectively precluded a reasonable Board member from the knowledge that he or she was violating Ponterio's Equal Protection rights when he or she declined to reconsider his denial.

Ponterio's "class of one" claim is alternatively dismissed on these grounds as well.

C. Ponterio's Request for a Continuance

Ponterio requests a continuance to permit further discovery pursuant to Fed. R. Civ. P. 56(f), and to overcome several privileges asserted by Defendants.  It appears,

---

where there are no genuinely disputed factual issues material to the defense.  Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (internal citations omitted).

however, that no amount of further discovery could change the two central findings that are fatal to Ponterio's claim – that 1) Ponterio is not similarly situated to other retired Justices, owing to his denial of recertification on the merits, and 2) Defendants are entitled to qualified immunity, because they objectively could not have known that their decision not to reconsider Ponterio's denial violated his clearly established constitutional rights. Ponterio's request for a continuance and for further discovery is denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Ponterio's action is dismissed.

The Clerk of the Court is directed to close this matter and remove it from my docket.

**SO ORDERED.**
**September 5, 2007**
**New York, New York**

_____
U.S.D.J.